Judge Hellerstein

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ACP Master, Ltd.; Aurelius Capital Master, Ltd.; Davidson Kempner Partners; Davidson Kempner Institutional Partners, L.P.; Davidson Kempner International, Ltd.; Davidson Kempner Distressed Opportunities Fund LP; Davidson Kempner Distressed Opportunities International Ltd.; M.H. Davidson & Co.; DDJ Capital Management, LLC, on behalf of certain funds and/or accounts that it manages and/or advises; and Redwood Master Fund, LTD, on behalf of themselves and on behalf of a class of similarly situated persons pursuant to Fed. R. Civ. P. Rule 23,<br><br>                            Plaintiffs,<br><br>v.<br><br>CIT Group Funding Company of Delaware, LLC; Barclays Bank PLC; Barclays Capital, Inc.; Baupost Group Securities, L.L.C.; American High-Income Trust; The Bond Fund of America Inc.; The Income Fund of America Inc.; American Funds Insurance Series, High-Income Bond Fund; American Funds Insurance Series, Asset Allocation Fund; American Funds Insurance Series, Bond Fund; American Funds Insurance Series, Global Bond Fund; Capital World Bond Fund, Inc.; Capital Guardian High-Income Opportunities Fund; State of Alaska Permanent Fund; Centerbridge Special Credit Partners, L.P.; CCP Credit Acquisition Holdings, LLC; Oaktree High Yield Plus CITF Ltd; Oaktree Opps CITF LTD.; SOF Investments, L.P.; MSD Value Investments, L.P.; SPCP Group III LLC; SPCP Group LLC; and Doe Lenders Nos. 1-100,<br><br>                            Defendants. | <br><br>Civil No. 09 CIV 8144 |

## COMPLAINT

Plaintiffs, ACP Master, Ltd.; Aurelius Capital Master, Ltd.; Davidson Kempner Partners; Davidson Kempner Institutional Partners, L.P.; Davidson Kempner International, Ltd.; Davidson Kempner Distressed Opportunities Fund LP; Davidson Kempner Distressed Opportunities International Ltd.; M.H. Davidson & Co.; DDJ Capital Management, LLC, on behalf of certain funds and/or accounts that it manages and/or advises; and Redwood Master Fund, LTD (collectively, the "Plaintiffs"), by and through their undersigned counsel, on behalf of themselves and all others similarly situated, based on actual knowledge of their own actions and upon information and belief as to the action of others and as a result of the Plaintiffs' investigation to date, allege as follows:

## PRELIMINARY STATEMENT

1. This action arises out of a blatant fraudulent conveyance by CIT Group Funding Company of Delaware, LLC ("Funding"). The fraudulent conveyance was caused by Funding incurring a secured guaranty for the benefit of Barclays Bank PLC, Barclays Capital, Inc. (together with Barclays Bank PLC, the "Barclays Defendants"), and the Defendant Lenders[1] under a new $3 billion credit facility. The credit facility was entered into for the use and benefit of CIT Group, Inc. ("CIT Group"), Funding's ultimate parent, at a time when Funding was insolvent or rendered insolvent by the incurrence of the secured guaranty and for which Funding did not receive any consideration, much less "fair consideration". The end result of Funding's

---

[1]  The Defendant Lenders include Defendants Baupost Group Securities, L.L.C., American High-Income Trust, The Bond Fund of America Inc., The Income Fund of America Inc., American Funds Insurance Series, High-Income Bond Fund, American Funds Insurance Series, Asset Allocation Fund, American Funds Insurance Series, Bond Fund, American Funds Insurance Series, Global Bond Fund, Capital World Bond Fund, Inc., Capital Guardian High-Income Opportunities Fund, State of Alaska Permanent Fund, Centerbridge Special Credit Partners, L.P., CCP Credit Acquisition Holdings, LLC, Oaktree High Yield Plus CITF Ltd, Oaktree Opps CITF LTD., SOF Investments, L.P., MSD Value Investments, L.P., SPCP Group III LLC, SPCP Group LLC, and Defendant Doe Lenders Nos. 1-100.

2

incurrence of this obligation is that, while CIT Group was able to stave off a near-term default on its own obligations, Funding was left unable to pay the amounts owed to the Plaintiffs on billions of dollars of unsecured notes when due starting in July 2010.

2.  Each of the named Plaintiffs is holder or beneficial owner or an investment manager for accounts and/or funds which are holders or beneficial owners of Funding's 4.65% Senior Notes due July 1, 2010, 5.60% Senior Notes due November 2, 2011, and 5.20% Senior Notes due June 1, 2015 (collectively, the "Notes"). The named Plaintiffs hold, own or manage approximately $362 million of the Notes issued by Funding, or 16.4% of the aggregate principal amount of the Notes.

3.  Funding is a wholly-owned subsidiary of CIT Group and was created as a special purpose finance vehicle. In 2005 and 2006, Funding issued approximately $2.2 billion in aggregate principal amount of senior unsecured notes consisting of 4.65% Senior Notes due July 1, 2010, 5.60% Senior Notes due November 2, 2011, and 5.20% Senior Notes due June 1, 2015 (collectively, the "Notes"). Funding transferred the Note proceeds to CIT Financial Ltd. ("CIT Financial"), a wholly-owned subsidiary of CIT Group and a sister-company of Funding, in exchange for several promissory notes owed from CIT Financial to Funding (the "Intercompany Notes").

4.  As of June 30, 2009, Funding had assets of approximately $2.32 billion and on-balance sheet liabilities of approximately $2.21 billion, leaving stockholders' equity of approximately $108 million (assuming the Intercompany Notes are worth their book value and that Funding does not have any additional liabilities not reflected on its balance sheet).

5.  In July 2009, Funding and CIT Group caused Funding to guaranty and collateralize some $3 billion of debt obligations of CIT Group—an amount substantially in

excess of even the book value of Funding's assets—for the benefit of the Barclays Defendants and the Defendant Lenders under a new senior secured term loan facility, leaving Funding in a position where it will be unable to meet its obligations to its own note holders as the Notes become due, approximately $1 billion of which are due on July 1, 2010.

6.  In addition to the guaranty, Funding granted a lien on all of its assets to secure the guaranty obligation, effectively subordinating the Notes held by Plaintiffs to an additional $3 billion of liabilities.

7.  At the time that the guaranty was incurred and the lien granted, it is clear that Funding was either already insolvent or was thereby rendered insolvent. Through this action, the Plaintiffs, in their capacity as holders of the Notes and creditors of Funding, and on behalf of themselves and all others similarly situated, seek to annul as a fraudulent conveyance that certain guaranty obligation incurred by Funding and the lien securing such guaranty.

## JURISDICTION AND VENUE

8.  This Court has subject-matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, which confers federal jurisdiction over class actions where, as here, (i) "any member of a class of plaintiffs is a citizen of a State different from any Defendants", (ii) the number of members of the proposed plaintiff class is 100 or more, and (iii) the aggregated amount in controversy exceeds five million dollars ($5,000,000). See 28 U.S.C. §§ 1332(d)(2), (5)(b) and (6).

9.  This Court has personal jurisdiction over Funding, the Barclays Defendants, and the Defendant Lenders because these parties agreed pursuant to section 10.16 of the Amended Credit Facility (as defined below) that this Court has jurisdiction over them and that any judicial

proceeding "arising out of or relating [thereto] ... may be brought in any state or Federal court of competent jurisdiction in the state, county and city of New York."

10. Venue is properly placed in this district pursuant to 28 U.S.C. § 1391(a)(1) and (2). A substantial part of the events and the omissions giving rise to Plaintiffs' claims occurred in this district. Furthermore, Defendant CIT Funding, the Barclays Defendants, and the Defendant Lenders have consented to venue in this district.

## THE PARTIES

11. Plaintiff ACP Master, Ltd. is a Cayman Islands exempt company with no place of business in the United States and with its principal place of business in the Cayman Islands. ACP Master, Ltd. is a holder or beneficial owner of certain of the Notes.

12. Plaintiff Aurelius Capital Master, Ltd. is a Cayman Islands exempt company with no place of business in the United States and with its principal place of business in the Cayman Islands. Aurelius Capital Master, Ltd. is a holder or beneficial owner of certain of the Notes.

13. Plaintiff Davidson Kempner Partners is a limited partnership organized under the laws of and maintaining a principal place of business in New York and is a holder or beneficial owner of certain of the Notes.

14. Plaintiff Davidson Kempner Institutional Partners, L.P. is a limited partnership organized under the laws of Delaware with its principal place of business in New York and is a holder or beneficial owner of certain of the Notes.

15. Plaintiff Davidson Kempner International, Ltd. is a corporation organized under the laws of the British Virgin Islands with no place of business in the United States and is a holder or beneficial owner of certain of the Notes.

16. Plaintiff Davidson Kempner Distressed Opportunities Fund LP is a limited

partnership organized under the laws of Delaware with its principal place of business in New York and is a holder or beneficial owner of certain of the Notes.

17.     Plaintiff Davidson Kempner Distressed Opportunities International Ltd. is a Cayman Islands exempt company with no place of business in the United States.  Plaintiff Davidson Kempner Distressed Opportunities International Ltd. is a holder or beneficial owner of certain of the Notes.

18.     Plaintiff M.H. Davidson & Co. is a limited partnership organized under the laws of and maintaining a principal place of business in New York and is a holder or beneficial owner of certain of the Notes.

19.     Plaintiff DDJ Capital Management, LLC, is a limited liability company organized under the laws of and maintaining a principal office in Massachusetts and is an investment manager which advises and manages funds and/or accounts which are holders or beneficial owners of certain of the Notes.

20.     Plaintiff Redwood Master Fund, LTD is a Cayman Islands exempt company with no place of business in the United States and with its principal place of business in the Cayman Islands.  Redwood Master Fund, LTD is a holder or beneficial owner of certain of the Notes.

21.     Defendant Funding is a Delaware limited liability company formerly known as CIT Group Funding Company of Canada, a Nova Scotia unlimited company and issuer of the Notes.  In 2007, CIT Group Funding Company of Canada was converted to a limited company, changed its name to CIT Group Funding Company of Canada Limited, and subsequently domesticated in the United States as CIT Group Funding Company of Delaware LLC.  Funding is a finance vehicle whose sole purpose was to issue public debt and use the proceeds of such debt to make loans to affiliated entities.  Funding is effectively a dormant finance vehicle since it

has not issued public debt since 2006. The Notes are Funding's only on-balance sheet indebtedness.

22. Defendant Barclays Bank PLC is a public limited company registered in England and Wales with its principal place of business in London, England and is sued herein in its capacity as administrative agent and collateral agent under the Credit Facilities.[2]

23. Defendant Barclays Capital, Inc. is a Connecticut corporation with its principal place of business in New York and is sued herein in its capacity as sole lead arranger, sole bookrunner and syndication agent under the Credit Facilities.

24. Defendant Baupost Group Securities, L.L.C. is a limited liability company organized under the laws of Massachusetts and is sued herein in its capacity as lender under the Credit Facilities.

25. Defendant American High-Income Trust is organized under the laws of Delaware with a principal place of business in Massachusetts and is sued herein in its capacity as lender under the Credit Facilities.

26. Defendant The Bond Fund of America Inc. is organized under the laws of Delaware with a principal place of business in California and is sued herein in its capacity as lender under the Credit Facilities.

27. Defendant The Income Fund of America Inc. is organized under the laws of Maryland with a principal place of business in California and is sued herein in its capacity as lender under the Credit Facilities.

28. Defendant American Funds Insurance Series, High-Income Bond Fund is organized under the laws of Massachusetts and is sued herein in its capacity as lender under the

---

[2] The term "Credit Facilities" is discussed and defined in paragraph 49, below.

Credit Facilities.

29. Defendant American Funds Insurance Series, Asset Allocation Fund is organized under the laws of Massachusetts and is sued herein in its capacity as lender under the Credit Facilities.

30. Defendant American Funds Insurance Series, Bond Fund is sued herein in its capacity as lender under the Credit Facilities.

31. Defendant American Funds Insurance Series, Global Bond Fund is sued herein in its capacity as lender under the Credit Facilities.

32. Defendant Capital World Bond Fund, Inc., is a corporation organized under the laws of Maryland with a principal place of business in California and is sued herein in its capacity as lender under the Credit Facilities.

33. Defendant Capital Guardian High-Income Opportunities Fund is sued herein in its capacity as lender under the Credit Facilities.

34. Defendant State of Alaska Permanent Fund is sued herein in its capacity as lender under the Credit Facilities.

35. Defendant Centerbridge Special Credit Partners, L.P. is a limited partnership organized under the laws of Delaware with a principal place of business in New York and is sued herein in its capacity as lender under the Credit Facilities.

36. Defendant CCP Credit Acquisition Holdings, LLC is a limited liability corporation organized under the laws of Delaware with a principal place of business in New York and is sued herein in its capacity as lender under the Credit Facilities.

37. Defendant Oaktree High Yield Plus CITF Ltd. is sued herein in its capacity as lender under the Credit Facilities.

38. Defendant Oaktree Opps CITF Ltd. is sued herein in its capacity as lender under the Credit Facilities.

39. Defendant SOF Investments, L.P. is sued herein in its capacity as lender under the Credit Facilities.

40. Defendant MSD Value Investments, L.P. is a limited partnership organized under the laws of Delaware with its principal office in New York, New York and is sued herein in its capacity as lender under the Credit Facilities.

41. Defendant SPCP Group III LLC is a limited liability company organized under the laws of Delaware with its principal office in Greenwich, Connecticut and is sued herein in its capacity as lender under the Credit Facilities.

42. Defendant SPCP Group LLC is a limited liability company organized under the laws of Delaware with its principal office in Greenwich, Connecticut and is sued herein in its capacity as lender under the Credit Facilities.

43. Defendant Doe Lenders Nos. 1-100 are the lenders under the Original Credit Facility and/or the Amended Credit Facility (both as defined below), their successors, assigns and participants. The Defendant Doe Lenders are sued herein in their capacity as lenders under the Original Credit Facility and/or the Amended Credit Facility.

## **FACTUAL ALLEGATIONS**

A. *CIT Group*

44. CIT Group is a bank holding company and the parent company for a number of entities that provide lending, advisory and leasing services to small and middle market businesses.

45.     CIT Group has significant maturities of unsecured debt in both the near term and future years. In July 2009, CIT Group publicly announced that it would be unable to pay its obligations in the normal course of business in 2009 and service its debt in a timely fashion and, as a result, initiated restructuring efforts.

**B.     *Issuance of the Notes and Corporate Organization of Funding***

46.     Pursuant to that certain Indenture dated as of May 31, 2005 among CIT Group Funding Company of Canada ("CIT Canada ULC"), as Issuer, CIT Group, as Guarantor, and JP Morgan Chase Bank, N.A., as Trustee (the "2005 Indenture"), CIT Canada ULC issued two series of its senior unsecured notes–one series designated as the $1,000,000,000 4.65% Senior Notes due July 1, 2010 and one series designated as the $700,000,000 5.20% Senior Notes due June 1, 2015.

47.     Pursuant to that certain Indenture dated as of November 1, 2006 among CIT Canada ULC, as Issuer, CIT Group, as Guarantor, and the Bank of New York, as Trustee (the "2006 Indenture" and collectively with the 2005 Indenture, the "Indentures"), CIT Canada ULC issued a third series of senior unsecured notes designated as the $500,000,000 5.60% Senior Notes due November 2, 2011.

48.     Pursuant to that certain shareholder's resolution dated as of December 28, 2007, CIT Canada ULC converted to a Nova Scotia limited company pursuant to Section 68 of the Companies Act (Nova Scotia) and registered as CIT Group Funding Company of Canada Limited ("CIT Canada Ltd."). Pursuant to that certain special resolution dated December 28, 2007, CIT Canada Ltd. was domesticated in the United States as CIT Group Funding Company of Delaware LLC, a Delaware limited liability company, on December 31, 2007.

C.  *CIT Group's Entry into the Credit Facilities*

49.     On July 20, 2009, in order to forestall an impending default under a series of its notes due August 17, 2009, CIT Group obtained $2 billion in emergency financing from the Defendant Lenders under a Credit and Guaranty Agreement (the "Original Credit Facility"), which provided for the possibility of an additional $1 billion in financing. On July 29, 2009, CIT Group borrowed the additional $1 billion from the Defendant Lenders and restated the terms of the Original Credit Facility under an Amended and Restated Credit and Guaranty Agreement (the "Amended Credit Facility" and collectively with the Original Credit Facility, the "Credit Facilities"). CIT Group and certain of its subsidiaries had fully drawn the $3 billion in financing by August 4, 2009.

50.     Under the terms of the Credit Facilities, each wholly-owned domestic subsidiary of CIT Group jointly and severally guaranteed the debt obligation of CIT Group under the Credit Facilities. Thus, as a result of the guaranty (the "Guaranty"), Funding, as a wholly-owned, domestic subsidiary of CIT Group, is now liable for this debt.

51.     Furthermore, the Credit Facilities are secured by a perfected first priority lien on substantially all unencumbered assets of each wholly-owned domestic subsidiary of CIT Group pursuant to the Amended and Restated Collateral Agreement dated as of July 29, 2009 (the "Collateral Agreement"). Schedule 5B of the Collateral Agreement confirms that Funding pledged the Intercompany Notes, its primary assets, as collateral for the $3 billion in financing. In short, Funding incurred a first priority lien on substantially all of its assets to secure the Guaranty (the "Lien").

52.     Borrowings under the Credit Facilities were to be used by CIT Group and certain of its asset-originating subsidiaries for general corporate purposes, working capital needs and to

redeem CIT Group's outstanding Floating Rate Senior Notes due August 17, 2009 (the "August 17 Notes").

53. Funding did not receive any proceeds from the Credit Facilities nor was Funding liable for the debt obligations of CIT Group prior to Funding's Guaranty under the Credit Facilities. Thus, Funding received no release from any debt obligation—nor any other benefit from the Defendant Lenders or from CIT Group—in exchange for providing the Guaranty or the Lien.

**D.**   ***Effect on Funding of Entry into the Credit Facilities***

54. As of June 30, 2009, Funding's balance sheet reported total assets with a book value of $2.32 billion. As of June 30, 2009 (prior to the incurrence of the $3 billion guaranty obligation), Funding's balance sheet reported total liabilities with a book value of approximately $2.21 billion comprised primarily of Notes in the face amount of $2.19 billion. As of June 30, 2009, Funding's balance sheet reported shareholders' equity with a book value of approximately $108 million.

55. Pursuant to section 7.1 of the Amended Credit Facility, Funding, as a wholly-owned, domestic subsidiary of CIT Group, is a Guarantor and thus has irrevocably and unconditionally guaranteed the due and punctual payment in full of all obligations incurred under the Amended Credit Facility jointly and severally with the other Guarantors. Moreover, Funding pledged the Intercompany Notes, its primary asset and an important source of recovery for the holders of the Notes, for the benefit of the Defendant Lenders.

56. Since it is clear that the fair value of Funding's equity is no greater than its book value, it necessarily follows that Funding, an entity with shareholders' equity book value of only

approximately $108 million, was rendered insolvent by the incurrence of a $3 billion guaranty obligation.

57.     As previously noted, Funding did not receive any benefit or consideration whatsoever in exchange for providing the Guaranty or the Lien under the Credit Facilities and has emerged from the transaction insolvent if it was not already insolvent at the time of the transaction.

**E.     *Savings Clause under the Credit Facility***

58.     The Amended Credit Facility includes a "savings clause" which provides that there can be no fraudulent conveyance under the terms of the Guaranty or the Lien. To the extent that the Guaranty and Lien are not annulled pursuant to sections 273 and 279 of the New York Debtor and Creditor Law, the Plaintiffs seek a declaratory judgment that Funding's obligations under the Guaranty and/or the Lien are no greater than zero dollars.

59.     Section 7.1 of the Amended Credit Facility contains the "savings clause" (the "<u>Savings Clause</u>") which provides in relevant part as follows:

> "Notwithstanding any provision to the contrary of this Agreement, of the Collateral Documents, or of any other Credit Document, it is intended that the Guaranties and the liens and security interests granted by Guarantors not constitute a "Fraudulent Conveyance". For purposes hereof, "Fraudulent Conveyance" means a fraudulent conveyance under section 548 of the Bankruptcy Code or a fraudulent conveyance or fraudulent transfer under the provisions of any applicable fraudulent conveyance or fraudulent transfer law or similar law of any state, nation or other governmental unit, as in effect from time to time. The parties hereto agree that, if the Guaranties or any liens or security interests would, but for the application of this Section 7.1, constitute a Fraudulent Conveyance, the Guaranties and each such lien and security interest shall be valid and enforceable only to the maximum extent that would not cause the Guaranties or such lien or security interest to constitute a Fraudulent Conveyance."

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.  The requirements of subparts 23(a) and 23(b)(1), (b)(2), and (b)(3) of the Rule are met with respect to the Class defined below.

61.     Plaintiffs bring this action on behalf of themselves and on behalf of all holders or owners of the Notes.  Excluded from the Class are the Defendants and any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

62.     The Class is so numerous that joinder of all members is impracticable.  Upon information and belief, Class members number at least one hundred.

63.     There are questions of law or fact common to the Class, including at least the following:

(a) whether the Defendants engaged in a fraudulent conveyance;

(b) whether Funding is undercapitalized and insolvent such that it is unable to satisfy the claims of its note holders;

(c) whether the Defendants agreed to enter into the Original Credit Facility and later the Amended Credit Facility and the Collateral Agreement, including the Guaranty and Lien incurred thereunder, despite knowing that the transaction would make Funding unable to pay its debts;

(d) whether Defendants' wrongful conduct resulted in economic damage to Plaintiffs and members of the Class, and the amount of said damages; and

(e) what relief should be imposed in favor of the Plaintiffs and the Class.

64.     Plaintiffs' claims are typical of the claims of the other members of the Class.  Plaintiffs have the same interests in this matter as all other members of the Class, and their claims are substantially identical to and typical of the claims of all members of the Class.

Plaintiffs do not have interests antagonistic to or in conflict with those of the members of the Class.

65. Plaintiffs are committed to pursuing their claims and have retained competent counsel experienced in class actions. Plaintiffs will fairly and adequately represent the interests of the Class members.

66. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

67. Prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to various class members. Prosecuting separate actions by Class members would also create a risk of adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

68. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. To Plaintiffs' knowledge, no similar litigation is currently pending by other members of the Class.

69. The Defendants have acted or refused to act, with respect to some or all issues presented in this Complaint, on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

70. Plaintiffs know of no difficulty in the management of this claim as a class claim.

## COUNT I – CLASS CLAIM

### FRAUDULENT TRANSFER AGAINST FUNDING, THE BARCLAYS DEFENDANTS AND THE DEFENDANT LENDERS (SECTIONS 273 AND 279 OF THE NEW YORK DEBTOR AND CREDITOR LAW)

71. The Plaintiffs repeat and reallege the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

72. Funding was either already insolvent at the time of the Amended Credit Facility or became insolvent as a result of the Guaranty under the Amended Credit Facility and the Lien under the Collateral Agreement.

73. Funding did not receive fair consideration in exchange for Funding's Guaranty under the Amended Credit Facility or the Lien under the Collateral Agreement.

74. The Plaintiffs, as holders of the Notes, are actual creditors of Funding as defined in section 270 of the New York Debtor and Creditor Law.

75. Funding's Guaranty and Lien under the Amended Credit Facility and the Collateral Agreement should be annulled pursuant to sections 273 and 279 of the New York Debtor and Creditor Law.

## COUNT II

### DECLARATORY JUDGMENT AS TO VALUE OF THE GUARANTY BY FUNDING AND THE LIEN UPON FUNDING'S ASSETS

76. The Plaintiffs repeat and reallege the allegations contained in all prior paragraphs, which are incorporated by reference as if set forth fully herein.

77. The Amended Credit Facility includes a "savings clause" which provides that the Guaranty and the related Lien under the Amended Credit Facility are limited such that there can be no fraudulent conveyance under the terms of such Guaranty.

78. Funding is liable to all holders of the Notes in an amount equal to approximately $2.3 billion.

79. Funding's primary assets are the Intercompany Notes from CIT Financial in the face amount of $2.2 billion on account of Funding's loan of the proceeds of the issuance of the Notes.

80. As Funding was insolvent or was rendered insolvent as a result of the Guaranty and/or Lien, any amount in excess of the fair value of Funding's assets less its liabilities would constitute a fraudulent conveyance.

81. Accordingly, to the extent that the Guaranty and/or Lien is not annulled pursuant to sections 273 and 279 of the New York Debtor and Creditor Law, the Plaintiffs are entitled to a declaratory judgment that pursuant to section 7 of the Amended Credit Facility Funding's obligations under the Guaranty and Lien are limited to an amount no greater than zero dollars.

## RESERVATION OF RIGHTS

82. The Plaintiffs believe that additional claims against the Defendants and/or other parties would exist were Funding, CIT Group, and/or any related affiliates to declare bankruptcy under title 11 of the United States Code. The Plaintiffs reserve any and all rights to bring such claims to the extent authorized by the Court and/or applicable law.

## PRAYER FOR RELIEF

83. WHEREFORE, by reason of the foregoing, the Plaintiffs request that the Court enter an order:

   a. Determining that class certification in this action is appropriate for class certification, certifying Plaintiffs as representatives of the class under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs' counsel as class counsel;

   b. Ruling in favor of the Plaintiffs, annulling the Guaranty and the Lien;

   c. Permanently enjoining Funding from guarantying or collateralizing the debt obligations of CIT Group and/or its affiliated entities;

   d. Awarding the Plaintiffs' costs, expenses and attorneys' fees;

   e. Should the Court not annul the Guaranty and/or Lien, granting in the alternative a declaratory judgment that Funding's obligations under the Guaranty and Lien are no greater than zero dollars; and

   f. Granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

ACP Master, Ltd.; Aurelius Capital Master, Ltd.; Davidson Kempner Partners; Davidson Kempner Institutional Partners, L.P.; Davidson Kempner International, Ltd.; Davidson Kempner Distressed Opportunities Fund LP; Davidson Kempner Distressed Opportunities International Ltd.; M.H. Davidson & Co.; DDJ Capital Management, LLC, on behalf of certain funds and/or accounts that it manages and/or advises; and Redwood Master Fund, LTD,

By their attorneys,

GOODWIN PROCTER LLP
Soley as to Defendants: CIT Group Funding Company of Delaware, LLC; Baupost Group Securities, L.L.C.; American High-Income Trust; The Bond Fund of America Inc.; The Income Fund of America Inc.; American Funds Insurance Series, High-Income Bond Fund; American Funds Insurance Series, Asset Allocation Fund; American Funds Insurance Series, Bond Fund; American Funds Insurance Series, Global Bond Fund; Capital Guardian High-Income Opportunities Fund; State of Alaska Permanent Fund; Centerbridge Special Credit Partners, L.P.; CCP Credit Acquisition Holdings, LLC; SOF Investments, L.P.; MSD Value Investments, L.P.; SPCP Group III LLC; and SPCP Group LLC

Allan S. Brilliant
Craig P. Druehl
Yvonne M. Cristovici
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, New York  10018
Tel.: 212.813.8800
Fax: 212.355.3333
E-Mail:  abrilliant@goodwinprocter.com
            cdruehl@goodwinprocter.com
            ycristovici@goodwinprocter.com

Dated:  September 23, 2009

KLESTADT & WINTERS, LLP
Soley as to Defendants:
Barclays Bank PLC; Barclays Capital; Capital World Bond Fund, Inc.; Oaktree High Yield Plus CITF Ltd; and Oaktree Opps CITF LTD.;

Tracy L. Klestadt
Brendan M. Scott
292 Madison Avenue, 17th Floor
New York, NY 10017-6314
Tel. (212) 972-3000
Fax. (212) 972-2245
Email:  tklestadt@klestadt.com

RECEIVED 09 SEP 23 PM 10:55 U.S. DISTRICT COURT S.D.N.Y.